# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

EDWARD M. LETTUNICH
and SANDRA L. LETTUNICH,

**Debtors.**

**Bankruptcy Case
No. 08-02589-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    Edward M. Lettunich, Meridian, Idaho, Pro Se Debtor.

    Robert Burril, Prairie City, Oregon, Pro Se Creditor.

    Conrad Aiken, RACINE OLSON NYE BUDGE & BAILEY, Boise, Idaho, Attorney for Trustee Gary L. Rainsdon.

## Introduction

On October 23, 2009, Bob Burril ("Burril") filed a letter with the Court in which he sought assistance "getting [his] back wages." Docket No. 365. The Court has treated Burril's letter as a motion for allowance of administrative expenses. The chapter 7 trustee, Gary Rainsdon

MEMORANDUM OF DECISION - 1

("Trustee"), objected to the motion.[1] Docket No. 372. Then, on November 30, 2009, Burril filed a second letter to the Court in which he revised his earlier request. Docket No. 378. Following a hearing on January 6, 2010[2], the Court took the issues under advisement. For the reasons set forth below, the Court will grant Burril's motion, but only in part. This Memorandum constitutes the Court's findings of fact and conclusions of law and disposes of the motion. Fed. R. Bankr. P. 7052, 9014.[3]

## Facts[4]

---

[1] D.L. Evans Bank, an unsecured creditor in this case, also objected to Burril's motion. *See* Docket No. 373. In its concise, written objection, the bank essentially concurred with the objection raised by Trustee, and requested that the Court deny Burril's request for administrative expenses. D.L. Evans Bank did not appear at the hearing, and offered no additional argument regarding the motion or its objection.

[2] The Court initially convened a hearing on this motion on December 1, 2009. However, after a brief discussion with Burril, the Court elected to continue the hearing to January 6, 2010 to allow Burril time to retain legal counsel. At the hearing in January, Burril explained to the Court that he had decided not to retain legal counsel, and that he was prepared to proceed and represent himself.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

[4] The instant motion is similar to Debtors' earlier motion for administrative expenses. *See* Docket No. 349. The Court outlined several facts

MEMORANDUM OF DECISION - 2

Debtors Edward and Sandra Lettunich ("Debtors") owned and operated a large cattle operation in Southwestern Idaho and Eastern Oregon. For at least the past several years, Debtors have employed Burril to assist in the cattle operation. Burril's duties included assisting in the general day-to-day care of the herd, calving, doctoring, and working the bulls.

On November 17, 2008, Debtors filed a petition for relief under chapter 12 of the Bankruptcy Code, and Forrest Hymas was appointed to serve as the chapter 12 trustee. Burril continued to work for Debtors after their petition was filed.

During the pendency of the chapter 12 case, Debtors sought permission to sell a portion of the herd. Specifically, Debtors sought permission to sell at auction a large number of bulls and cow/calf pairs. Docket No. 90. Following a hearing on this motion, the Court granted Debtors' request to sell the bulls only, subject to conditions. An order

---

pertaining to the Lettunich cattle operation in its earlier memorandum of decision on Debtors' motion. *See* Docket No. 376. For ease of exposition, and to add context to this decision, many of those facts are repeated here.

MEMORANDUM OF DECISION - 3

allowing the sale was entered on March 23, 2009, Docket No. 122, and it apparently took place on March 31, 2009 at the Treasure Valley Auction in Caldwell, Idaho. The sale generated approximately $150,000, and the sale proceeds were turned over to Mr. Hymas.

On April 29, 2009, the bankruptcy case was converted to a chapter 7 case, and Trustee was appointed. Since that time, Trustee has worked to liquidate the assets of the estate. On October 23, 2009, Burril filed his first letter in which he sought payment for various expenses he claimed to have incurred, as well for several months of wages which he claims were not paid in full. The letter itemizes expenses and wages that were incurred both before and after Debtors filed their bankruptcy petition. The total amount requested in this letter was $17,572.95. Docket No. 365. On October 28, 2009, Burril filed a supplement which contained a number of invoices for automotive services, some of which are specifically mentioned in the letter.

MEMORANDUM OF DECISION - 4

On November 30, 2009, Burril filed his second letter.[5] In this letter, Burril separates his expense claims into three categories: fuel and truck expenses, wages, and housing. *See* Docket No. 378. Within each category, specific expenses have been itemized and a brief narrative is given explaining these items. All references to pre-petition wages or expenses have been omitted from this letter. The total amount which Burril requests he be paid from the bankruptcy estate in this letter is $8,892.66.

## Discussion

The Bankruptcy Code affords a priority status for administrative expenses. *In re Coolex*, 96.1 I.B.C.R. 35, 36 (Bankr. D. Idaho 1996); 11 U.S.C. § 507(a)(2) (providing second priority status to "administrative expenses allowed under section 503(b) of this title . . . ."). Whether a claim constitutes a priority administrative expense is determined under § 503(b), which provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed

---

[5] Though it does not specifically indicate as much, it appears that this letter amends and supersedes Burril's earlier letter, and the Court has treated it as doing so.

MEMORANDUM OF DECISION - 5

>  administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
>>  (1)(A) the actual, necessary costs and expenses of preserving the estate[.]

11 U.S.C. § 503(b)(1)(A). This provision is construed narrowly by the courts. *Nat'l. Labor Relations Bd. v. Walsh (In re Palau Corp.)*, 18 F.3d 746, 750 (9th Cir. 1994); *In re Sunny Ridge Manor, Inc.* 90 I.B.C.R. 12 (D. Idaho 1990). A strict construction regarding administrative expenses serves, in part, to maximize and protect the limited assets of the bankruptcy estate for the benefit of the unsecured creditors. *Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir. 1988).

The Ninth Circuit Bankruptcy Appellate Panel has summarized the requisite elements to establish administrative expense priority as follows:

> [a]dministrative status is allowed when a claim (1) is incurred postpetition, (2) directly and substantially benefits the estate, and (3) is an actual and necessary expense.

*Gull Indus., Inc. v. John Mitchell, Inc. (In re Hanna)*, 168 B.R. 386, 388 (9th Cir. B.A.P. 1994) (citation omitted). "The applicant must prove by a preponderance of the evidence entitlement to the administrative expense."

MEMORANDUM OF DECISION - 6

*Id.*; *In re Coolex*, 96.1 I.B.C.R. at 36.

In his most recent request, Burril has removed all references to pre-petition expenses.[6] The remaining expenses are clearly labeled with post-petition dates, which Trustee does not dispute, so the first element for allowance is satisfied. As a result, the Court's analysis will focus on whether the claimed expenses directly and substantially benefitted the estate, and whether they were actual and necessary. Each of Burril's categories in examined in turn.

**1.    Fuel and Truck Expenses**

Burril explained that he assisted Debtor Ed Lettunich and his son Peter in caring for the cattle herd. To perform his duties, Burril alleges he was required to utilize his own 4-wheel drive pickup truck. Because the cattle were spread between several locations in Idaho and Oregon, Burril claims he had to travel long distances on a daily basis to perform his

---

[6] Of course, if Burril holds a claim arising before the bankruptcy case was commenced, he may file a proof of claim for those amounts. The Court expresses no opinion regarding the validity of any claim for pre-bankruptcy expenses listed in Burril's original letter.

MEMORANDUM OF DECISION - 7

duties. Burril claims to have incurred a significant fuel expenses in doing so. He estimates that during the pendency of Debtors' chapter 12 case, he incurred approximately $1,880 in fuel costs.[7] He explained that he paid cash for this fuel and did not retain any receipts.

Given the nature of Debtors' operation, the Court is not surprised to hear that fuel expenses would be incurred in order to properly care for the herd. However, for Burril to obtain an administrative expense for such costs, he show more than that the fuel expense was necessary - he must also show that the expense was actually incurred. *In re Palau Corp.*, 18 F.3d at 750. And while the Court does not doubt that Burril purchased *some* fuel in order to travel between the several locations where the cattle were located, it is impossible on this record to determine the precise amount of Burril's fuel expense incurred "on the job."

Burril candidly admits to the Court that he did not retain any receipts to show what amounts he paid for fuel, and that his figure of

---

[7] Burril itemizes this figure as follows: $1,400 between November, 2008 and January 21, 2009; $300 between February 2009 and March 4, 2009; and $180 for delivery of the bulls after the March 31, 2009 sale.

MEMORANDUM OF DECISION - 8

$1,880 is simply an approximation of his costs. Burril has not submitted an affidavit or any other competent evidence to substantiate the fuel expense. In the absence of such evidence, the Court simply can not allow $1,880 as an administrative expense.

In addition to his fuel expenses, Burril also lists a $54 expense in this letter for service performed on his pickup. But, again, it appears that this figure, like the fuel expenses, is an estimate. However, the Court's concerns regarding this item are allayed because Burril submitted an invoice itemizing the services performed. The invoice shows that the total expense was actually $54.95, and that it was incurred on December 15, 2008. Trustee was concerned that to the extent Burril's vehicle was also used for personal reasons, and not solely in connection with the cattle operation, this expense may not be proper. The Court does not share Trustee's concern, and finds that this oil change was an actual and necessary expense, and that it provided a direct and substantial benefit to the estate. In short, $54.95 for automotive services will be allowed as an administrative expense.

MEMORANDUM OF DECISION - 9

### 2.   Wages

Burril explained at the hearing that he was hired by Debtors to assist in caring for the cattle, and that he was to receive $2,000 per month as his wages.  In his letter dated November 30, 2009, Burril explained that his duties during the course of Debtors' bankruptcy case included working the bulls, assisting in calving and doctoring the animals, distributing advertising materials and contacting potential buyers, and helping with the general day-to-day care of the herd.  In addition, Burril noted that he worked at the March 31, 2009 auction and delivered the bulls to the purchasers.  Burril explained that he was not paid for his services from the date of the petition through April 10, 2009, and that it would be unreasonable for anybody to assume this his services were offered free of charge.  As a result, he requests that $4,237 be allowed as an administrative expense for this work.[8]

Trustee objected to this expense, raising two primary concerns:

---

[8] Burril concedes that he did not work for several weeks during this period for health reasons, but he does not request any wages for that time.

MEMORANDUM OF DECISION - 10

whether the wages were actually owed, and whether Burril's services rendered a direct and substantial benefit to the estate. With respect to the first concern regarding the actual nature of the expenses, Trustee noted that he had not seen an employment contract between Burril and Debtors. Trustee explained that in trying to understand this claim, he reviewed Debtors' tax returns for 2007 and 2008.[9] Included in these returns are profit and loss details concerning Debtors' business, which have sporadic payments to "Bobby Burill" [sic] under the heading Contract Labor. Trustee conceded that these payments are generally consistent with Burril's claim that his monthly salary was $2,000. However, Trustee argued that given this label, and the lack of other employee-related expenses in the returns such as workers' compensation or other similar payments, Burril was more like an independent contractor than an employee. Trustee suggested that an independent contractor was similar to a sole proprietor, and in light of this Court's decision regarding Debtors'

---

[9] The 2007 and 2008 tax returns were admitted as Trustee's Exhibits 1 and 2, respectively.

MEMORANDUM OF DECISION - 11

request for administrative expenses, *see* Memorandum of Decision, Docket No. 376, Burril's request should also be denied.

Trustee's arguments miss the mark. As explained at the hearing, the purpose in highlighting the court's decision in *In re Am. Home Mortgage, Holdings, Inc.*, 411 B.R. 169, 176 (Bankr. D. Del. 2008) in this Court's memorandum of decision was not to draw a distinction between employees and independent contractors, but rather to distinguish between employees and an individual debtor. The Court's design was to emphasize that there was little case authority to support the notion that an individual debtor who, while operating as a sole proprietor in a reorganization case, was entitled to an administrative claim for the value of his own personal services. Here, regardless of whether Burril was an employee or an independent contractor, the cost incurred by the debtor for Burril's services could constitute an administrative expense.

Furthermore, Trustee's attempt to establish a pre-petition employment arrangement between Debtors and Burril by reference to tax documents aids little in this analysis. In this context, the focus is not the

MEMORANDUM OF DECISION - 12

terms of a pre-petition employment arrangement. Rather, if an employee or independent contractor rendered necessary services to preserve the estate, the focus is determining the actual value of those services. As noted above, as the administrative claimant, it is Burril's burden to prove what that value is. *In re Hanna*, 168 B.R. at 388.

Trustee has not disputed that Burril was employed by Debtors during the chapter 12 case, and the Court accepts Burril's representation that he performed services at their request. While Trustee disagrees, the Court finds that the amounts listed in Debtors' tax returns for prebankruptcy payments to Burril tend to substantiate the amounts requested by Burril here. While the proof could be better, the Court believes, more probably than not, Burril's figures are correct. The Court is also satisfied that Burril's services benefitted the bankruptcy estate. Burril worked to maintain the cattle during the case, and also worked at the sale of those cattle. The sale generated a significant amount for distribution to creditors.

Burril's administrative expense claim for his unpaid wages will

MEMORANDUM OF DECISION - 13

therefore be allowed.

### 3. Housing

Burril explained that one of the benefits of his employment with Debtors was that, in addition to his salary, Debtors would pay Burril's house rent in the amount of $500 per month. Burril alleges that these payments were not made from the time Debtors filed their bankruptcy petition through April, 2009, and that Burril has been making monthly payments of $100 to his landlord on that outstanding obligation. Burril also notes that he was required to pay a $305 power bill which was past due. As a result, Burril seeks $2,721.66 as an administrative expense for these housing expenses.

Burril's proof in this regard falls short. Burril has no independent evidence to corroborate his claim. In contrast to the wages he claims for actually working with the herd, Burril offered no proof to show why these rent expenses were necessary for the preservation of the bankruptcy estate. The rent expenses do not appear to be tied directly to preservation of the cows, but rather are, at best, a component of Burril's pre-petition

MEMORANDUM OF DECISION - 14

arrangement with Debtors. As explained above, the pre-existing employment agreement is not helpful in determining whether the expense was necessary to preserve the estate. In the absence of adequate evidence linking this expense to the preservation of the estate, this claim cannot be allowed as an administrative expense.

## Conclusion

For these reasons, Burril's request for administrative expenses is granted, but only in part. Burril will be allowed a priority administrative expense in the amount of $54.95 for services on his truck and $4,237 for wages for work performed during the chapter 12 case.

A separate order will be entered.

Dated: February 8, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 15